IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRUCE GREGORY HARRISON, III,          )
                                       )
         Petitioner,                   )
                                       )
     v.                                )     1:10CR411-1
                                       )     1:15CV1101
UNITED STATES OF AMERICA,              )
                                       )
         Respondent.                   )

### **RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's "Motion to Vacate, Set Aside, or Otherwise Correct a Sentence by an Individual in Federal Custody, pursuant to 28 U.S.C. [§] 2255" ("Section 2255 Motion") (Docket Entry 150).[1] For the reasons that follow, the Court should deny relief.

### INTRODUCTION

The Court (per now-retired United States District Judge James A. Beaty, Jr.) entered a Judgment sentencing Petitioner, inter alia, to serve 144 months in prison and to pay $43,207,976.81 in restitution, following a jury's finding of guilt on 63 payroll and individual tax-related charges. (Docket Entry 127; see also Docket Entry 10 (Superseding Indictment); Docket Entry 60 (Verdict

---

[1] Parenthetical citations refer to Petitioner's above-captioned criminal case. Pin cites refer to the page number in the CM/ECF footer appended to each page of a document upon electronic docketing. In quoting Petitioner's filings, this Recommendation applies standard capitalization conventions and omits bold font.

Sheet).) The United States Court of Appeals for the Fourth Circuit affirmed and the United States Supreme Court declined review. United States v. Harrison, 541 F. App'x 290 (4th Cir. 2013), cert. denied, ___ U.S. ___, 135 S. Ct. 881 (2014). Petitioner then timely filed the Section 2255 Motion, which (nominally) presents four grounds for relief (all alleging ineffective assistance of counsel) (see Docket Entry 150 at 3-14), supported by his affidavit (see id. at 18-19). The United States responded (Docket Entry 161) and Petitioner replied (Docket Entry 163).

DISCUSSION

Petitioner possessed a federal constitutional right to effective assistance of counsel in his criminal case in this Court. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To establish an ineffectiveness claim, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687–94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element . . ., [the defendant] would have to show that there is a reasonable probability that, but for counsel's

2

unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)).

### Ground One

Ground One of the Section 2255 Motion asserts that "Petitioner recived [sic] ineffective assistance of counsel at the <u>trial</u>, <u>sentencing</u> and <u>appellate</u> level" (Docket Entry 150 at 3 (emphasis added)) and offers these specific, supporting allegations:

1) "<u>trial counsel</u> [] failed to object to the testimony introduced by Rob Patterson which was solicited by the prosecution, [about conduct] uncharged in the [Superseding I]ndictment [that constituted] a 'non-illegal' event pursuant to statute" (<u>id.</u> at 5 (emphasis added) (citing Docket Entry 92 at 140); <u>see also</u> <u>id.</u> at 2 ("Petitioner . . . was 'surprised' at trial with 'uncharged and non-illegal conduct', whereby the prosecution elicited testimony regarding [Federal Unemployment Tax Act ("FUTA" or "F.U.T.A.")] taxes. Not only was [he] deprived of Due Process when the Government effectively constructively amended his [Superseding I]ndictment and varied from the charges, [but also] he was deprived of effective counsel under the Sixth Amendment when [trial] counsel did not object . . . ."), 5 ("[T]he government got to benefit [by] introducing an entirely separate and non[-]charged matter into the mix and Petitioner's [trial] counsel failed to defend such, although there is no basis in law for such, effectively varying

3

from the [Superseding I]ndictment and constructively amending the charges and varying from the [Superseding I]ndictment.”));

2) "the government [brought] the FUTA taxes into sentencing where sentencing counsel [] failed to raise [a] question" (id. at 5 (emphasis added); see also id. at 2 (stating that sentencing counsel "failed to adequately argue that failure to pay [FUTA taxes] . . . is a 'non-criminal event,'" describing "main question to be answered [a]s:  Can [] Petitioner's sentence be enhanced for conduct that does not give rise to criminality, or [was not] charged in an indictment[ and] proved to a jury, or was a subsequent tax amount to be found by special verdict by the jury?," and asserting that Petitioner "was deprived of effective counsel under the Sixth Amendment when counsel did not . . . defend at sentencing [as to FUTA taxes]")); and

3) "[a]ppellate counsel [] failed to properly address those [FUTA tax-related] claims as well, although he was directed to do so" (id. at 5 (emphasis added); see also id. at 2 ("The matter was further exacerbated when appella[te] counsel declined to argue [FUTA tax-related issues] on appeal. . . .  [Petitioner] was deprived of effective counsel . . . when counsel did not . . . address [FUTA tax-related issues] during appeal.")).

All of these claims fall short.  First, Petitioner can show neither that his trial counsel acted unreasonably by foregoing an objection to the evidence concerning FUTA taxes, nor that prejudice

4

resulted from that election, given that (on appeal) Petitioner "argue[d] that the Government constructively amended the [Superseding I]ndictment by presenting evidence that he failed to pay [FUTA taxes]," Harrison, 541 F. App'x at 292, and the Fourth Circuit "reject[ed that] contention[]," id.; see also id. ("[T]here was no constructive amendment in this case. . . . [Petitioner] contends such an amendment occurred in this case because the Government presented evidence that he also failed to pay [FUTA taxes] that w[ere] not charged in the [Superseding I]ndictment. This evidence, however, was admitted . . . simply to show that [his] staffing agencies were still in operation in the years he failed to submit payroll taxes."). In other words, the Fourth Circuit's ruling establishes that an objection at trial to the FUTA tax evidence would have failed and thus any related ineffectiveness claim fails. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to object . . . [if] it would have been futile . . . ."); see also United States v. Robinette, No. 98-50733, 213 F.3d 636 (table), 1999 WL 1706626, at *1 (5th Cir. Apr. 12, 2000) (unpublished) ("The issue underlying [the] ineffective-assistance-of-counsel claim . . . was decided . . . on appeal . . . . Because th[e appeals] court has determined that [the underlying issue lacked merit], counsel's failure to raise [it at trial] . . . did not constitute deficient performance and did not prejudice [the petitioner].").

5

Second, Petitioner cannot make out an ineffectiveness claim against his sentencing counsel regarding FUTA taxes.  As the United States has explained, "[t]axes pursuant to [FUTA] played no part at sentencing."  (Docket Entry 161 at 2-3; see also id. at 5-6 ("FUTA returns were never introduced at sentencing, nor were FUTA taxes ever considered in tax loss calculations." (citing Docket Entry 113-1 at 2 (documenting, in "Tax Loss Computation for Guidelines Purposes," total of $43,961,921.09, without reference to any FUTA taxes))); Docket Entry 135 at 13-36 (setting forth testimony by case agent regarding tax losses totaling $43,939,229.81, none of which included unpaid FUTA taxes), 44 ("The Court will find that by the preponderance of the evidence the total loss would be . . . $43,939,229.81[.]").)  Further, to the extent Ground One more generally alleges that Petitioner's sentencing counsel should have objected to the inclusion in the tax loss calculation under the Sentencing Guidelines of any sums associated with conduct beyond what the United States specifically "charged in [the Superseding I]ndictment[ and] proved to a jury" (Docket Entry 150 at 2), that claim provides no basis for collateral relief, because:

A) Petitioner's sentencing counsel made just such an objection (see Docket Entry 135 at 6 ("object[ing] to the amount of loss" and contending it "should be a 26-level enhancement [under U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(K), for more than $7,000,000, but not more than $20,000,000, rather than a] 28-level enhancement [under

6

U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(L), for more than $20,000,000 but not more than $50,000,000]"), 38-39 (arguing that tax loss under Sentencing Guidelines should not exceed "total for payroll taxes owed by all companies for all quarters [charged in Superseding Indictment of] fifteen-million-nine-hundred-thousand-and-change" plus "individual income taxes [charged in Superseding Indictment], which . . . gets [tax loss] to about 18 million")); and

B) Judge Beaty properly overruled that objection (see Docket Entry 135 at 44-45), see, e.g., United States v. Miller, 372 F. App'x 358, 358-59 (4th Cir. 2010) ("Though [the defendant] asserts that facts supporting [Sentencing Guidelines] enhancements . . . must be admitted by the defendant or found by a jury beyond a reasonable doubt, the remedial portion of United States v. Booker[, 543 U.S. 220, 246 (2005),] explicitly rejected such an approach. After Booker, the sentencing court continues to make factual findings concerning sentencing factors by a preponderance of the evidence." (internal citation omitted)).[2]

---

[2] Notably, in resolving Petitioner's direct appeal, the Fourth Circuit rebuffed a similar "contention, that the restitution [wa]s capped at $15.9 million, the identified tax loss on Counts 2-63[, because, although] . . . restitution is limited to the offense[s] of conviction . . ., [Petitioner] overlook[ed] his conviction on Count One . . . . Th[at] count covered a broader swath of conduct and amply support[ed] the full restitution award [of $43,207,976.81]." Harrison, 541 F. App'x at 293 (internal brackets, citation, and quotation marks omitted); see also id. at 292 n.1 ("The restitution order [of $43,207,976.81] differed [slightly] from the tax loss [under the Sentencing Guidelines of $43,939,229.81] because the tax loss included loss to the State of
(continued...)

7

Third, Petitioner's ineffective assistance claim against his appellate counsel related to FUTA taxes lacks merit (again, as stated by the United States), "because appellate counsel *did* raise the admission of FUTA returns as error before the Fourth Circuit" (Docket Entry 161 at 6 (emphasis in original)). The Fourth Circuit simply "reject[ed that] contention[]." Harrison, 541 F. App'x at 292. Moreover, the Fourth Circuit's "rul[ing] against [P]etitioner on th[at] issue does not prove that [his appellate] counsel was ineffective." Banks v. United States, Nos. 5:05CR30, 5:08CV162, 2010 WL 3855065, at *21 (N.D.W. Va. July 21, 2010) (unpublished), recommendation adopted, 2010 WL 3854426 (N.D.W. Va. Sept. 29, 2010), appeal dismissed, 439 F. App'x 234 (4th Cir. 2011).

In sum, the claims in Ground One warrant no collateral relief.

---

[2](...continued)
North Carolina, while the restitution order included loss only to the [Internal Revenue Service]."). In light of that ruling, if Petitioner's appellate counsel had argued that the tax loss under the Sentencing Guidelines should exclude matters beyond Petitioner's offenses of conviction, not only would that argument have failed in light of Booker, but (even if it succeeded) his tax loss under the Sentencing Guidelines would have remained materially unchanged. Specifically, Petitioner's tax loss total still would have surpassed by far the $20,000,000 threshold for a 28-level increase under U.S.S.G. §§ 2T1.1(a)(1), 2T4.1(L)), given the Fourth Circuit's determination that the losses directly linked to Count One (combined with the losses directly linked to Counts Two through Sixty-Three) exceeded $43,000,000. As a result, any ineffectiveness claim based on the decision by Petitioner's appellate counsel to refrain from challenging the tax loss calculation under the Sentencing Guidelines could not satisfy Strickland's prejudice prong. See Galloway, 749 F.3d at 241.

8

Ground Two

According to Ground Two of Petitioner's Section 2255 Motion, his "[t]rial [counsel's] and sentencing counsel's performance was deficient when they failed to present evidence that failure to pay F.U.T.A. taxes was non-criminal and could not meet the standards of U.S.S.G. § 1.B1.1.3 [sic] for sentencing enhancement purposes." (Docket Entry 150 at 7.) In particular, Ground Two alleges that, after "a hotly contested trial over F.I.C.A. taxes[, Petitioner] was surprised at sentencing by the additional computations regarding F.U.T.A. taxes, an event that greatly exacerbated his punishment (i.e. 'jail time') and his restitution. Petitioner at all times was owed the Constitutional protection to have each and every allegation charged in an indictment and proved to a jury." (Id. (internal brackets and citation omitted); see also id. at 8 (arguing that "[s]entencing counsel failed to demonstrate the non-criminality of failure to pay F.U.T.A. taxes"), 9 (complaining that "[t]rial counsel failed to argue that the prosecution expanded the scope of the [Superseding] Indictment when the Government presented testimony regarding F.U.T.A. taxes").) As detailed in the discussion of Ground One, the Fourth Circuit affirmed the admission at trial of FUTA tax-related evidence, Petitioner's tax loss total did not include any unpaid FUTA taxes, Booker authorized Judge Beaty to make findings under the advisory Sentencing Guidelines (using the preponderance standard) and to consider matters

9

uncharged in an indictment and neither admitted by Petitioner nor found by the jury, and the Fourth Circuit upheld the restitution award as fully supported by Petitioner's counts of conviction. Accordingly, the ineffective assistance claims in Ground Two fail in the same manner as do the like claims in Ground One.[3]

---

[3] Ground Two's citation of Apprendi v. New Jersey, 530 U.S. 466 (2000), Ring v. Arizona, 536 U.S. 584 (2002), and Alleyne v. United States, 570 U.S. 99 (2013) (see Docket Entry 150 at 7-8) does not support an ineffectiveness claim against Petitioner's sentencing counsel (or appellate counsel). To begin, although (based on the logic of Apprendi and Ring) the Booker Court struck down judicial fact-finding under the then-mandatory Sentencing Guidelines, see Booker, 543 U.S. at 231-33, it preserved the practice by rendering the Sentencing Guidelines advisory, see id. at 245. Consistent with Booker, Judge Beaty treated the Sentencing Guidelines as advisory in Petitioner's case (and, pursuant to 18 U.S.C. § 3553(a), varied downward from the recommended imprisonment range). (See Docket Entry 135 at 103-07.) Given that fact and the fact that Petitioner "was sentenced below the statutory maximums on each count [of conviction], his [Apprendi/Ring] argument is without merit." United States v. McKoy, 498 F. App'x 369, 371 (4th Cir. 2012). Likewise, "[a]s *Alleyne* had no effect on Guidelines enhancements, [Petitioner's reliance on that decision] is without merit." United States v. Holder, 549 F. App'x 214, 215 (4th Cir. 2014). Ground Two also includes several snippets from the trial testimony of an accountant (see Docket Entry 150 at 9-10 (quoting Docket Entry 95 at 85, 97, 107-09)); however, Ground Two does not develop any coherent argument as to how that record material would support any ineffectiveness claim (see id.; see also id. at 18-19 (failing to address said matter in Petitioner's affidavit)). "[A] habeas petition is expected to state facts that point to a real possibility of constitutional error. . . . Thus, vague and conclusory allegations [of this sort] . . . may be disposed of without further investigation by th[is] Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (internal quotation marks omitted). Additionally, Ground Two confusingly states that "there was no reference to losses attributed to activities well outside the scope of the statute of limitations under 26 U.S.C. [§] 6531, a fact that Petitioner's counsel never raised either during the trial, or at the sentencing, a fact well supported by the record." (Docket Entry 150 at 10; see also id. ("[A]ssuming a six year
(continued...)

10

Ground Three

Ground Three of the Section 2255 Motion alleges that Petitioner's trial counsel "failed to address the fact that the Government presented invalid legal theories." (Id. at 11; see also

---

[3](...continued)
statute of limitations under 26 U.S.C. [§] 6531, the [Superseding I]ndictment and the proofs offered at trial clearly extend past the six year window prescribed by law.").) To the extent Ground Two asserts that, at trial, the United States introduced evidence about matters beyond the limitations period and that Petitioner's trial counsel should have objected to such evidence, that claim "is vague, conclusory, speculative, and unsupported and fails for all these reasons," Cabrera v. United States, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, Jr., C.J.). (See Docket Entry 150 at 10 (neglecting to develop said claim); see also id. at 18-19 (same).) Any claim of ineffectiveness by Petitioner's sentencing counsel on that front falls short even more clearly, as he objected to tax losses outside the limitations period (see Docket Entry 135 at 39-40) and Judge Beaty properly overruled that objection (see id. at 44-45), see United States v. Turner, No. 90-5021, 925 F.2d 1458 (table), 1991 WL 18140, at *2-3 (4th Cir. Feb. 19, 1991) (unpublished) ("The appellant argues that the 1982 and 1983 allegations of tax fraud may not be considered as relevant conduct [under the Sentencing Guidelines] because the statute of limitations bars punishment for these stale offenses. . . . This argument is flawed in at least two respects: First, it is well established that the statute of limitations only applies to charges or indictments . . . and does not deal with the question whether a court may consider uncharged conduct when fashioning an appropriate sentence. Second, the guidelines expressly provide for consideration of all prior relevant conduct at sentencing." (internal citation omitted)). Lastly, Ground Two baldly declares that Petitioner's trial counsel "was deficient in holding the Government to it's [sic] burden of proof as to elements of 26 U.S.C. [§] 7212(a), as even [the Fourth Circuit] has made clear that it is a required element that the Government prove obstruction of a Government officer as part of a 7212(a) conviction." (Docket Entry 150 at 10 (internal quotation marks omitted) (citing United States v. Lovern, 293 F.3d 695 (4th Cir. 2001)); see also id. at 18-19 (failing to discuss said claim).) Petitioner cannot secure collateral relief with such conclusory allegations. See Dyess, 730 F.3d at 359; Cabrera, 2014 WL 6386902, at *9.

11

id. at 10 (concluding Ground Two by stating: "A complete review of the record . . . reveals that subsection[s] (a) and (e) ([in Count One] of the [Superseding I]ndictment), constitute legally invalid theories, facts that will be discussed in the next section of th[e Section 2255 Motion]."), 12 ("[C]ount [O]ne of the [Superseding I]ndictment must be dismissed . . . .").) In support of this claim, Ground Three relies on these five contentions:

1) "subsections (a) and (e) ([in Count One] of the [Superseding I]ndictment) were legally invalid" (id. at 11 (referring to Docket Entry 10 at 5, 7));

2) "F.U.T.A. taxes are assessed against the corporation, rather than the individual" (id.);

3) "the [G]overnment utilized activities 'outside the scope of limitations' to advance it's [sic] arguments" (id.);

4) the Government "told the jury that [] Petitioner falsely told the nominee owner and controller of I.H.T. of S.C. that he would fund the check for purposes of paying the I.R.S., when in fact the company did fund approx[imately] $87,000.00 of the outstanding $99,000.00" (id.); and

5) the Government "told the jury that [] Petitioner had purchased his home with tax proceeds when in fact the home in question was purchased in 1997, well outside the six-year statute of limitations" (id.).

12

The second of those five contentions merits no additional discussion; as shown in connection with Ground One, the Fourth Circuit upheld the admission at trial of FUTA tax-related evidence (to establish that Petitioner's companies operated during the period when he failed to submit payroll taxes to the Internal Revenue Service). The remaining four contentions underlying Ground Three concern these allegations of Count One:

> From in or about 2003, through in or about 2009, . . . [Petitioner] did corruptly obstruct and impede, and endeavor to obstruct and impede, the due administration of the Internal Revenue laws by various means, including, but not limited to, the means alleged below:
>
> a. From in or about 2003 through in or about November 2006, [Petitioner] converted to his own personal and business use certain monies received by Hobbs Staffing Services, Inc., d/b/a/ USA Staffing and U.S. Labor, Inc., instead of accounting for and paying over these monies to the Internal Revenue Service. [Petitioner] converted and used these funds for various personal and business uses, including, but not limited to, the purchase of personal residences, the purchase of a yacht and the financing of movies.
>
> . . . .
>
> e. On or about September 25, 2009, [Petitioner] caused I.H.T. of SC, Inc., to generate and send to the Internal Revenue Service a check in the amount of $135,693.25, knowing that sufficient funds did not exist in the bank account of I.H.T. of SC, Inc., to cover this check, [and Petitioner] falsely told the nominee owner and the controller of I.H.T. of SC, Inc., that he would fund this check for the purpose of paying over payroll taxes to the Internal Revenue Services [sic].

(Docket Entry 10 at 5, 7.)

Ground Three invites the Court to declare that Petitioner's trial counsel should have argued that the above-quoted "subsections

13

(a) and (e)" in Count One were "legally invalid" (Docket Entry 150 at 11), as that argument would have caused the Court to overturn the jury's guilty verdict on Count One, because:

A) subsection (a) improperly targets "activities 'outside the scope of limitations'" (id.), by asserting that Petitioner used funds intended for the Internal Revenue Service for "the purchase of personal residences" (Docket Entry 10 at 5), "when in fact the home in question was purchased in 1997, well outside the six-year statute of limitations" (Docket Entry 150 at 11); and

B) subsection (e) states that Petitioner "falsely told the nominee owner and the controller of I.H.T. of SC that he would fund [a] check for purposes of paying the I.R.S., when in fact the company did fund [a substantial portion of the amount due]" (id.).

The Court should reject that invitation for several reasons. First, subsection (a) of Count One does not specify a particular residence that Petitioner used misappropriated funds to purchase (and, in fact, refers to multiple "personal residence<u>s</u>." (Docket Entry 10 at 5 (emphasis added).) Further, Ground Three neither identifies any part of the trial transcript where the United States introduced evidence about Petitioner's residential real estate purchases nor points to record material demonstrating that any such purchases on which the United States relied at trial actually occurred outside of the limitations period. (See Docket Entry 150 at 11-13; see also id. at 18-19 (failing to address said matters in

14

Petitioner's affidavit); Docket Entry 163 at 3 (asserting without record citations: "The Government argued 'outside the [Superseding I]ndictment's scope of limitations' and punished [] Petitioner for conduct 'beyond the statute of limitations.' Multiple inflammatory false statements were introduced at trial, without objection, when the Government falsely told the jury that Petitioner purchased his home with the 'tax proceeds' in question.").) Finally, Ground Three lacks any record citations regarding the matters referenced in subsection (e) of Count One. (See Docket Entry 150 at 11-13; see also id. at 18-19 (making no mention of transaction involving "I.H.T. of SC"); Docket Entry 163 at 1-6 (same).)

"[I]t is not the job of the Court to comb the record and to construct a potential claim on [Petitioner's] behalf." Golden v. United States, Nos. 1:12CR26, 1:13CV969, 2015 WL 2383371, at *2 n.4 (M.D.N.C. May 19, 2015) (unpublished) (internal brackets, ellipsis, and quotation marks omitted), recommendation adopted, slip op. (M.D.N.C. June 19, 2015). Put another way, these "[u]nsupported, conclusory allegations do not warrant an evidentiary hearing, much less relief." Whitley v. United States, Nos. 1:03CR445, 1:12CV67, 2014 WL 4443295, at *6 n.1 (M.D.N.C. Sept. 9, 2014) (unpublished) (recommendation of Webster, M.J., adopted by Beaty, S.J.) (citing Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999)), appeal dismissed, 599 F. App'x 111 (4th Cir. 2015).

15

### Ground Four

Ground Four of the Section 2255 Motion states that Petitioner's "appella[te] counsel failed to raise a viable issue." (Docket Entry 150 at 14.) Specifically, Ground Four maintains that Petitioner's appellate counsel provided ineffective assistance by "not add[ing] an issue . . . [arguing that] the record clearly showed that Petitioner's 'jail time' was enhanced based on conduct that was not A.) illegal, B.) charged in an indictment, or C.) proved to a jury beyond a reasonable doubt." (Id. (internal citation and unmatched quotation mark omitted).) As explained in addressing Grounds One and Two, Petitioner's tax loss total did not include any unpaid FUTA taxes, Booker authorized Judge Beaty to make sentencing-related findings based on matters outside the Superseding Indictment that Petitioner did not admit and the jury did not find, and (in reviewing the restitution award) the Fourth Circuit concluded that Petitioner's counts of conviction established tax losses of more than $43,000,000. Given those considerations, Petitioner's "[a]ppellate counsel w[as] not ineffective for failing to raise [the issue now proposed by Petitioner] on appeal because it [wa]s plainly without merit," Carter v. Lee, No. 99-10, 202 F.3d 257 (table), 1999 WL 1267353, at *11 (4th Cir. Dec. 29, 1999) (unpublished).

Finally, Ground Four asserts that Petitioner's "[appellate] counsel was deficient for failing to ask the [Fourth Circuit] to

16

determine the 'reasonableness of [Petitioner's] sentence'." (Docket Entry 150 at 14.) Neither in Ground Four nor in his other filings supporting his Section 2255 Motion did Petitioner articulate a theory (let alone cite evidence) which would permit the Court to conclude that Judge Beaty imposed an unreasonable sentence. (See id. at 14, 18-19; Docket Entry 163 at 1-6.)[4] Under these circumstances, this final aspect of Ground Four also fails as a matter of law, because "Petitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the *Strickland* analysis," Cano v. United States, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) (Dietrich, M.J.), recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.).

## CONCLUSION

Petitioner has not shown entitlement to collateral relief.

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 150) be denied without a certificate of appealability.

> /s/ L. Patrick Auld
> **L. Patrick Auld**
> **United States Magistrate Judge**

February 19, 2019

---

[4] Conversely, the transcript of Petitioner's sentencing hearing confirms that Judge Beaty faithfully followed proper sentencing procedures in imposing a substantively reasonable, downward variance sentence. (See Docket Entry 135 at 4-109.)